Barbara J. SMITH, Appellant,

v.

Patricia ANDREWS and Michael Vermillion, Appellees.

No. 2–91–240–CV.

Court of Appeals of Texas, Fort Worth.

June 2, 1992.

Rehearing Overruled July 22, 1992.

Jearl Walker, Fort Worth, for appellant.

Law Offices of Charles M. Noteboom, Brian K. Truncale and Cheryl D. Smith, Hurst, for appellees.

Before WEAVER, C.J., and HILL and LATTIMORE, JJ.

## OPINION

LATTIMORE, Justice.

This is an appeal by Barbara J. Smith from a judgment on a jury verdict which awarded Michael Vermillion and his mother, Patricia Andrews, $69,120.90 as a result of Smith's alleged negligence. On appeal, Barbara Smith contends that the trial court erred in: (1) submitting special question number one to the jury because there was no duty on the part of Barbara Smith to instruct or warn Vermillion not to enter the horse pen; (2) rendering judgment against Barbara Smith because Vermillion was a social guest and licensee who accepted the premises as he found them and therefore Barbara Smith was not negligent because she had no duty to warn him; (3) submit-ting the question of Barbara Smith's negligence to the jury because there was no evidence of such; (4) submitting the question of Barbara Smith's negligence to the jury because there was insufficient evidence of such; (5) submitting special question number one to the jury because there was no evidence that Barbara Smith's negligence was the proximate cause of the injury; and (6) submitting special question number one to the jury because there is insufficient evidence to support a finding that Barbara Smith's negligence was the proximate cause of Vermillion's injuries.

Reversed and rendered.

### Statement of Facts

On July 14, 1988, Vermillion visited the home of his friend Christopher Smith. Vermillion, sixteen years of age, then drove Christopher Smith, fourteen years of age, and Hillary Smith, seven years of age, down to the horse pen on a nearby piece of property which was controlled by the Smith family. Barbara Smith did not warn or instruct Vermillion regarding the possibility that a horse might kick nor did she instruct him not to enter the pen. After arriving at the pen, Christopher Smith orally medicated two of the horses without assistance; however, he was having difficulty getting a stallion named "Red" into a stall in order to medicate him as well. Vermillion was inside the corral and toward the rear of Red. The stallion then kicked Vermillion in the abdomen which eventually led to the removal of a significant portion of his pancreas.

Vermillion and his mother filed suit against William Smith, Barbara Smith, and Christopher Smith alleging that Vermillion's injuries resulted from the Smiths' negligence; the suit also alleged that the Smiths were strictly liable because Red had unreasonably dangerous propensities. The jury determined that Christopher Smith and his father, William Smith, were not negligent, that Red did not possess abnormally dangerous propensities, and that Barbara Smith's negligence proximately caused Vermillion's injuries.

### Appellant's Points of Error

In her first two points of error, Barbara Smith contends that Vermillion was a licensee on the property and that there was no duty to warn or instruct him not to enter the horse pen. A licensee is one who enters land of another with the permission of the land owner, but does so for his own convenience or on business for someone other than the owner. Consent to enter may be express or implied. *Texas–Louisiana Power Co. v. Webster*, 127 Tex. 126, 91 S.W.2d 302, 306 (1936); *Weaver v. KFC Management, Inc.*, 750 S.W.2d 24, 26 (Tex.App.—Dallas 1988, writ denied). Our review of the facts reveals that Vermillion's presence in the corral was not at Barbara Smith's invitation, either express or implied. While Vermillion did drive Christopher and Hillary Smith down to the horse corral with Barbara Smith's approval, the record does not reflect that Vermillion's presence in the corral was via Barbara Smith's express or implied invitation and thus his status never rose to that of an invitee. Having concluded that Vermillion was not an invitee while in the horse corral on July 14, 1988, the duty owed him by Barbara Smith was that owed a licensee.

The duty owed by a licensor to a licensee is not to injure willfully, wantonly, or through gross negligence. *State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974). In the present case, the jury only found Barbara Smith to have been negligent. There was no finding that she breached her duty not to injure Vermillion via willful, wanton, or grossly negligent conduct. However, an exception to this general rule, *supra*, is that when the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor either to warn the licensee of the dangerous condition or to make the condition reasonably safe. *Id.* The critical issue in this case involves whether there was a dangerous condition, a kicking horse, of which the licensee, Vermillion, was not aware.

We are therefore left to determine whether Vermillion was aware or could reasonably have been expected to be aware of the fact that horses kick. Vermillion testified at trial that he had been over to his cousin's house once or twice and that they have horses. Also, he rode his cousin's horses at least on one occasion while being led around. Vermillion testified that he had seen the Smiths' horses on prior occasions when Christopher Smith was feeding them. However, the most revealing portion of Vermillion's testimony for our purposes was an exchange with Brian Truncale, his attorney, during direct examination. When asked by Truncale whether he had "ever seen a horse kick anybody or be frisky or anything like that," Vermillion responded that he had "seen that happen on TV, at the rodeos or something."

Assuming that Vermillion came upon the land as a licensee, as is discussed *supra*, Barbara Smith's duty to warn or make safe would arise only if evidence shows that Vermillion did not have knowledge that horses may kick. *See Mendoza v. City of Corpus Christi*, 700 S.W.2d 652, 654 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). A licensee is imputed with the knowledge of those conditions perceptible to him, or the existence of which can be inferred from facts within his present or past knowledge. *See Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 564 (Tex.1976). Based upon the evidence adduced at trial and outlined above, we hold that Vermillion did have sufficient knowledge regarding the fact that horses kick, the existence of which can be inferred from facts within his past knowledge. Barbara Smith was therefore relieved of the duty to warn Vermillion not to get inside the corral because the horses may kick. The appellant's first two points of error are sustained.

The judgment of the trial court is reversed and judgment rendered that the appellees take nothing by their suit against Barbara Smith. Costs are assessed against the appellees.